2013 BNH 002

_____

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

In re:                                                          Bk. No. 12-11152-JMD
                                                                Chapter 13
Peter M. Graham and
Paula S. Graham,
        Debtors


*Charles L. Greenhalgh, Esq.*
*Cooper Cargill Chant, PA.*
*North Conway, New Hampshire*
*Attorney for Debtors*

*Lawrence P. Sumski, Esq.*
*Manchester, New Hampshire*
*Trustee*

## **OPINION**

### I. INTRODUCTION

      The Court has before it the Application for Fees of an Attorney for Debtor (Doc. No. 77) (the "Application") and the Chapter 13 Trustee's Objection to Debtors' Counsel's Fee Request (Doc. No. 80) (the "Objection").  On August 30, 2012, Cooper Cargill Chant, PA ("CCC"), counsel to the Debtors, filed the Application under 11 U.S.C. § 330, requesting approval of final fees in the amount of $31,500.00 for 158.3 hours of service rendered between March 13, 2012, and August 29, 2012, and expenses in the amount of $575.66.  Counsel has received a retainer of $3,500.00 in fees and $400.00 in costs for the initial filing of the petition, of which $1,000 is still in escrow to be applied to post-confirmation fees.  Counsel seeks to apply the retainer to the requested fee award, and to receive $26,600 in payment through the Plan.

This court has authority to exercise jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334, 157(a), and United States District Court for the District of New Hampshire Local Rule 77.4(a) "Delegated Jurisdiction." This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II. FACTUAL BACKGROUND

CCC was originally retained by the Debtors pre-petition to attempt to resolve a foreclosure by Peoples Bank. On April 9, 2012, the Debtors filed a skeletal voluntary petition for relief under chapter 13 of the Bankruptcy Code. On April 10, 2012, People's United Bank filed an Emergency Motion for Relief from Stay (the "Motion for Relief"), to which the Debtors objected. A preliminary hearing on the Motion for Relief was held on April 24, 2012, and at that time the Motion for Relief was set for an evidentiary hearing for the Debtors to show feasibility of the reorganization and to show that there was equity in some of the Debtors' real property. After that hearing, the parties negotiated a settlement that resulted in consent to lift the automatic stay being filed on May 18, 2012. In addition, after the meeting of creditors, the Chapter 13 Trustee filed a motion to dismiss for failure to make timely payments, failure to provide the Trustee with a copy of 2011 federal income tax returns, and failure to file Monthly Operating Reports. The Debtors responded to the motion to dismiss and, shortly before the scheduled hearing, filed a Second Amended Chapter 13 Plan dated August 16, 2012. After further oral modifications at the hearing, the amended plan, as orally modified, was confirmed on August 20, 2012. See Doc. Nos. 66 & 72. After entry of the confirmation order, CCC filed the Application before the Court.

The Chapter 13 Trustee objected to the Application, stating in his Objection that in a typical Chapter 13 case where the debtor(s) operate a business, debtors' counsel has fees of approximately $5,000 and that there is nothing in this record, in the Trustee's opinion, that would support fees of more than six times the average award requested.  The Trustee believes all amounts in excess of reasonable fees should go to unsecured creditors, not the attorney.  The Trustee did not object to the expenses in the Application.

On October 3, 2012, the Court held a hearing on the Application and Objection.  At that hearing, the Trustee stated the Objection stems from a concern that the requested fees were not reasonable–he does not contest whether the application is correct.  Further concern stems from the low percentage of distribution to the unsecured creditors.  The Second Amended Plan proposes a distribution of 0% to the unsecured creditors' claims, which total $141,298.29.  The Trustee argued that although this case is more difficult than the average chapter 13 case, there is no justification for such a high request.

In response, the CCC argued that the case required substantial work because of the expedited time frame as well as the work done by the attorneys to resolve the Motion for Relief and the accompanying preparation for the scheduled evidentiary hearing, which, CCC argued, involved similar issues to a confirmation hearing and required the development of evidence as to feasibility of the plan.  Further, CCC stated that counsel's attendance at the meeting of creditors and the preliminary hearing on the Motion for Relief added to the requested fees because the travel to Manchester requires a round trip of five hours.  The Court heard arguments and took the question of whether the requested fees are reasonable under submission.

**III.  DISCUSSION**

Section 330 of the Bankruptcy Code provides:

(a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a . . . professional person employed under section 327 or 1103–
    (A) reasonable compensation for actual, necessary services rendered by the . . . attorney and by any paraprofessional person employed by any such person; and
    (B) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1).  Specifically, § 330(a)(4)(B) provides with respect to chapter 13 fee applications that "the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section."  The "other factors" include

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3)(A)-(F).  The First Circuit has set forth the standard for evaluating an application for a fee award:

The standard is familiar: a bankruptcy court may award reasonable fees to a lawyer for a Chapter 13 debtor in line with "the benefit and necessity" of the services rendered 11 U.S.C. § 330(a)(4)(B).  Other considerations to be factored into the decisional calculus

4

>include the expertise of the attorney; the time expended by him; the reasonableness of the time given the nature, importance and complexity of the case; and the reasonableness of the billing rates requested.

Berliner v. Pappalardo (In re Sullivan), 674 F.3d 65 (1st Cir. 2012) (finding the bankruptcy court did not abuse its discretion in reducing an requested fee award of $11,857.36 in a relatively uncomplicated chapter 13 case to the retainer amount of $3,684.00).  The burden of proof is on the party requesting the compensation award. In re Little, – B.R. –, 2013 WL 69186, at *3 (B.A.P. 1st Cir. Jan. 4, 2013).

The First Circuit employs the lodestar approach to calculating attorneys' fees, i.e., determining a fee award by multiplying the number of hours productively spent (less time spent on unnecessary, duplicative, or overworked tasks) by a reasonably hourly rate. Sullivan, 674 F.3d at 69; see also Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 295-96 (1st Cir. 2001); In re Spillane, 884 F.2d 642 (1st Cir. 1989); cf. In re Lopez, 405 B.R. 24, 31-32 (B.A.P. 1st Cir. 2009).   Thus, in reviewing whether a fee award is reasonable, a court should consider: whether the number of hours spent is reasonable; whether the hours were productively, rather than unnecessarily or duplicatively, spent; and whether the hourly rate is reasonable, considering factors such as locality and the complexity of the work.  Courts have compared the amount of the application for compensation with not only any initial amounts projected in retainer agreements, but also with typical charges in similar cases.  Unless debtors' counsel can provide a very good reason for charging substantially in excess of the norm in the district, courts have limited the amount of fees awarded.

If the hourly rate, or the average hourly rate of all professionals included on the fee application, is deemed reasonable, a court turns to "a consideration of what time was reasonably

expended on the tasks." Davis v. Jacob S. Ciborowski Family Trust, 2012 WL 5904816 (D.N.H. Nov. 26, 2012) (finding that the amount of time billed for two motions to compel was excessive, and reducing the award by 33%).

If a court determines that a fee award should be reduced substantially, then it must provide a sufficiently detailed explanation of its action to allow a reviewing court to ascertain the trial court's thought process and to establish the basis for the reduction in award. See Bogan v. City of Boston, 489 F.3d 417, 430 (1st Cir. 2007); Pearson v. Fair, 980 F.2d 37, 46 (1st Cir. 1992). Particularly where there is an adjustment to the lodestar amount, a court must provide a "concise but clear explanation" of its calculation and any adjustments. Lopez v. Consejo De Titulares Del Condominio Carolina Ct. Apts., 405 B.R. 24, 30-31 (B.A.P. 1st Cir. 2009) (clarifying that the trial court need not "follow a 'rigid prescription' in making such a reduction"). If the trial court can establish that the hours claimed were excessive given the relative complexity of a proceeding, based on its finding of the complexity of the case, then the award may be reduced. Sullivan, 674 F.3d at 69-71.

In In re Claudio, the Bankruptcy Court for the District of Massachusetts explained: "Measuring proper compensation in Chapter 13 cases presents special challenges. Section 330(a)(4)(B) specifically directs the Court's attention to the welfare of the debtor rather than that of the bankruptcy estate. . . . The resources available to fund the typical Chapter 13 case come from the Chapter 13 debtor, an individual with a self-evident inability to raise substantial funds. The economics of a Chapter 13 practice therefore require that counsel to the chapter 13 debtor use appropriate techniques in order to reduce the costs of doing business." 459 B.R. 500, 512-13 (Bankr. D. Mass. 2011).

Here, the average hourly rate charged by CCC is $195.35.  The Trustee does not contest the reasonableness of the hourly rate, and the Court finds that such rate is comparable to rates in this district for similar work.  Accordingly, the Court will examine whether the hours spent were reasonable and productively spent, and whether any of the work was unnecessary or duplicative.

The total number of hours of service in this case, between March 15, 2012, and August 29, 2012, is 158.3 hours.  In its Application, CCC did not provide any allocation of the work done by task or category.  That failure made it nearly impossible for the Court to determine the reasonableness or necessity of any of the work described in the Application.  Therefore, the Court reviewed each entry in the detailed time sheets submitted by CCC and allocated the entries to various categories normally found in fee applications.  The Court's analysis resulted in the following allocations of the services described in the Application:

| Category | Hours Expended | Fees Requested |
|---|---:|---:|
| Prepetition | 17.5 | $3,418.63 |
| Case Administration | 35.6 | $6,954.46 |
| Preparing Schedules | 45.4 | $8,868.89 |
| Deed Recording | 4.3 | $840.01 |
| People's Motion for Relief | 37.7 | $7,364.70 |
| 341 Meeting | 13.4 | $2,617.69 |
| Trustee's Motion to Dismiss | 4.4 | $859.54 |
| **Total** | **158.3** | **$30,932.92** |

Based on the review of the above allocations, and a review of the docket and the documents filed in this case, the Court makes the following findings with respect to each category.

7

### A. Prepetition Services

The Application contains 17.5 hours of service for prepetition services, including pre-bankruptcy planning and attempts to work out the mortgage arrearage with People's United Bank, performed between March 15, 2012, and April 9, 2012, the Petition Date. Using the average hourly rate of $195.35, the fee award requested in the Application for prepetition services is $3,418.63. The prepetition retainer in the amount of $3,500.00 was an accurate estimate of the prepetition services provided by CCC.

Of course, unpaid prepetition services create an obligation to be paid–or a claim against the estate–rather than an administrative expense entitled to priority under the Bankruptcy Code. 11 U.S.C. § 503(b) provides that allowed administrative expenses include compensation and reimbursement awarded under § 330(a). However, a "request for priority payment of an administrative expenses pursuant to [§ 503] may qualify if (1) the right to payment arose from a postpetition transaction with the debtor estate, rather than from a prepetition transaction with the debtor, and (2) the consideration supporting the right to payment was beneficial to the estate of the debtor." Woburn Assocs. v. Kahn (In re Hemingway Transp. Inc.), 954 F.2d 1, 4-5 (1st Cir. 1992) (citing In re Mammoth Mart, Inc., 536 F.2d 950, 954 (1st Cir. 1976). Here, there is no contest that the prepetition services were beneficial to the estate of the debtor, but those services arose from a prepetition agreement with the Debtors to assist in a workout with Peoples United Bank. Therefore, these 17.5 hours, or $3,418.63, represent a right to payment arising out of a prepetition agreement and are not appropriately included in an application for compensation pursuant to § 330.

CCC did receive a prepetition retainer of $3,500. Frequently, counsel will apply prepetition retainers to prepetition fees and expenses immediately before the filing of a voluntary petition. It appears that the retainer in this case was not applied to the prepetition services. However, the Court shall apply the prepetition retainer to the prepetition services resulting in a small balance from that retainer, or $81.37, to be available to pay postpetition fees and expenses.

B.     Case Administration

The Application contains 35.6 hours of service for case administration throughout the course of the case, including communication with clients and the Court, 7.0 hours spent preparing, reviewing, and filing monthly operating reports for the Debtors' business, 6.3 hours reviewing proofs of claim filed by creditors, and preparing the instant fee application. Where no detailed description was provided, the hours were placed in this category by the Court. Using the average hourly rate, the fees requested for this category of services total $6,894.47.

In evaluating whether "the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed," the Court examined the docket and pleadings filed in the case as a whole. The Court's review reveals a chapter 13 case of higher than average, but not extraordinary, complexity. The Debtors operate a business, which appears to be a campground, and own several parcels of property in Tamworth, New Hampshire. They have a business loan secured by liens on those various parcels. It was this loan that necessitated the filing of the bankruptcy petition. As explained by CCC in the Application, the circumstances associated with that business loan created the need to move quickly and thus to expend significant time, on short notice, to protect the interests of the Debtors.

However, most of the other factors that could require a significant amount of legal services in a bankruptcy case (e.g., an excessive number of creditors, or large number of claims to review or negotiate) are not present in this case. Fewer than twenty creditors are listed in the schedules, and only eleven proofs of claim were filed–including the claim for the Town of Tamworth, filed by the Debtors, and the claim of People's United Bank, which was the subject of the contested motion for relief from stay. The claims bar date was August 13, 2012, and the governmental unit claims bar date was October 9, 2012, so there are no outstanding proofs of claim that can be filed. The number of creditors and proofs of claim are consistent with a typical chapter 13 bankruptcy case and do not, on their face, support an unusual amount of time for case administration. No satisfactory explanation for an extraordinary amount of services in the case administration category has been advanced by CCC. Accordingly, the Court finds that the amount of services in the Application properly allocated as case administration is unreasonable and unsupported by the record or the Application. The Court shall allow compensation for 40% of the services in this category or 14.25 hours, which at the average hourly rate is $2,783.74.

### C. Preparing Schedules and Plans

The Court's allocation shows 45.4 hours of service in the category for preparation of schedules and chapter 13 plans throughout the life of the case, including both the initial preparation of schedules after the petition date and the subsequent amendments, as well as the preparation of the initial chapter 13 plan and its subsequent amendments. Using the average hourly rate, the fee requested for this aspect of the representation is $8,868.89.

The Court has reviewed the original schedules filed with the Court and finds nothing to sway it from its view that this is a case of above average complexity, but not extraordinary

complexity or containing unique or unusual issues–e.g., competing claims, multiple lawsuits or causes of action, or an abnormally large number of creditors. The original Chapter 13 Plan, filed April 21, 2012, is straightforward and does not contain any special provisions that would justify an unusual amount of time preparing it. Essentially, the plan provided for the payment of the arrearage on the mortgage secured by Debtors' primary residence, for the payment of the estate's administrative claims and the priority claim of the Town of Tamworth, and for a distribution to the unsecured creditors of 0%. Notably, the original amount of attorney's fees requested to be paid through the plan was only $5,000. Therefore, the amount of time spent preparing the original schedules and plan–29.2 hours–is excessive based upon the modest number of creditors in the filed schedules and the routine nature of the chapter 13 plan. The only item of note could be time spent to properly identify and characterize the various parcels of real estate, but even that is not unusually complex.

      The Court also reviewed the subsequent amendments to the schedules and the First and Second Amended Plans. The Application contains a request for $3,104.67, representing 16.2 hours, that appears to have been spent amending the schedules and the chapter 13 plan. The amendments to the schedules were no more than basic amendments. Schedules I & J were amended to reflect the Debtors' employment as campground owners, not solely the part-time employment that was originally included in the Debtors' schedules; <u>see</u> Doc. No. 38, and Schedule D was amended to clarify it, as the original Schedule D "appeared to have more creditors and claims than there actually are," Doc. No. 47. The Petition was also amended on June 4, 2012, to correct an error in the Debtors' social security numbers. Doc. No. 52.

11

The amendments to the plan, Docs. No. 39 & 66, did not drastically increase the complexity of the plan's provisions, and the Second Amended Plan does not contain any special provisions. The Second Amended Plan provides for a total of monthly plan payments of $73,320.00, with $35,746.00 going to administrative claims, including the Trustee's fees and expenses, fees for the accountants retained by CCC, and $26,600–or 36.3% of the total of monthly plan payments–going to CCC. The rest of the plan payments provide for payment of the Town of Tamworth's priority claim ($14,701.00), arrears of $22,000 on the People's United Bank secured claim, and the $823,000 arrearage on the JP Morgan Chase secured claim. General unsecured claims, totaling $141,298.29, will still receive a 0% distribution. Doc. No. 66.

Debtors and their counsel have not, on the existing record, met their burden of proof to show that the amount of time expended on these amendments was reasonable considering the fairly straightforward nature of the amendments to both the schedules and the plan. In addition to the unreasonable amount requested for preparing the original schedules and plan, a similar amount of time was expended amending them. Therefore, the Court finds that the 45.4 hours spent preparing and amending the schedules and plan is an unreasonable amount of time to complete the tasks, even given the above average complexity of this case. The only factor justifying any material additional time was the necessity to negotiate with the business loan creditor at the outset of the case as part of resolving the stay relief motion. The Court shall allow 40% of the time allocated to this category, or 18.2 hours, at a value of $3,555.37.

### D.  Deed Recording

The Application contains 4.3 hours of time for preparation and recording of a deed(s) between April 9, 2012, and April 24, 2012, including a separate 2.4 hours for recording the deed.

Using the average hourly rate, the fee requested for this aspect of the representation is $840.00. CCC provided no explanation for why a deed needed to be recorded, why it needed to be recorded after the petition date, or what about the deed was so complex that it required such a significant amount of time. Here, the Court finds that CCC has not met its burden to show that the amount of time expended was necessary, beneficial, and reasonable. The Court will disallow all compensation for this category of services.

### E. People's United Bank's Motion for Relief

The Court allocated 37.7 hours of time to a category dealing with the stay relief motion filed by People's United Bank (the "Motion for Relief"), including responding to the motion for relief, attending a preliminary hearing on the motion, preparing for the preliminary hearing and the anticipated final hearing on the motion, and ultimately the settlement of the motion and filing of a consent to lift the automatic stay. Using the average hourly rate, the fee requested for this aspect of the representation is $7,364.70

The docket and the filings in this case suggest that the Debtors were in financial distress and filed for bankruptcy protection to protect their residence and their income source, a campground located on the same property as their primary residence. People's United Bank, which holds a first mortgage on that property, was aggressive, filing the Motion for Relief the day after the Petition Date. After a preliminary hearing and some preparation for an evidentiary hearing, the parties reached an agreement, and Debtors filed their Consent to People's United Bank's Emergency Motion for Relief from the Automatic Stay for Non-Residential Real Estate on May 18, 2012, Doc. No. 44, and on May 21, 2012, the Order Granting Motion for Relief from Stay, Doc. No. 45, was entered.

As stated in the Motion for Relief, the original loan was for $455,000, and as of April 10, 2012, the Debtors' indebtedness amounted to $419,000 plus $10,700 in real estate taxes, with no pre-petition arrearage. According to the schedules and the Motion for Relief, there is no equity in the property. As a result of CCC's efforts, the Debtors' issues with the bank were resolved through the granting of relief and the consensual provisions in the confirmed Second Amended Plan. It is fair to view the successful resolution of the issues with the bank as the cornerstone of the successful confirmation of a chapter 13 plan. The problems with the debtors' relationship with the bank was the reason the bankruptcy petition was filed.

The amount of time spent in resolving the stay relief issues with the bank does appear to be more than would be expected given the relative lack of complexity in the loan relationship and the fact that efforts were made prepetition to resolve such problems. The end result did not benefit the unsecured creditors. However, those efforts were successful and accomplished the best the Debtors could hope to achieve in this proceeding, namely the opportunity to save their home and business. The results satisfy the standard for benefit and necessity of those services to the Debtors. § 330(a)(4)(B). The settlement also benefits the priority claim of the Town of Tamworth under the confirmed plan. Retention of the property additionally facilitates the Debtors' fresh start.

While the Court believes the services in this category are higher than would be reasonably expected, the full amount in this category will be allowed as the end result warrants consideration. The Court shall allow fees for the 37.7 hours in this category at the average hourly rate for a total of $7,364.70.

### F. 341 Meeting

The Application contains 13.4 hours of service related to the § 341 meeting of creditors between April 10, 2012, and June 6, 2012, including a separate six hours for attending the meeting. Using the average hourly rate, the fee requested for this aspect of the representation is $2,617.69. While this appears to be on the high end of reasonable, the meeting was held in Manchester, and under the circumstances of this case the Court finds this amount to be reasonable for the services provided, and will allow the $2,617.69 related to the 341 meeting.

### G. Trustee's Motion to Dismiss

The Application contains 4.4 hours of service related to the Trustee's Motion to Dismiss the chapter 13 case and the Debtors' response thereto between July 23, 2012, and July 30, 2012. Using the average hourly rate, the fee requested for this aspect of the representation is $859.54. The Court finds this amount to be reasonable for the services provided, and will allow the $859.54 related to the Trustee's Motion to Dismiss.

## V. CONCLUSION

For the reasons set forth above the Court shall approve the Application in part, and allows as a priority administrative expense final fees in part in the amount of $17,181.04, as allocated below, and expenses in the amount of $575.66.

| Category | Fee Requested | Fee Allowed |
|---|---:|---:|
| Pre-Petition | $3,418.63 | $0.00 |
| Case Administration | $6,954.46 | $2,783.74 |
| Preparing Schedules | $8,868.89 | $3,555.37 |
| Deed Recording | $840.01 | $0.00 |
| People's Motion for Relief | $7,364.70 | $7,364.70 |

15

| 341 Meeting | $2,617.69 | $2,617.69 |
| --- | ---: | ---: |
| Trustee's Motion to Dismiss | $859.54 | $859.54 |
| **Total** | **$30,932.92** | **$17,181.04** |

This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate order consistent with this opinion.

    ENTERED at Manchester, New Hampshire.

Date:  February 14, 2013      /s/ J. Michael Deasy
    J. Michael Deasy
    Bankruptcy Judge